William F. NUCKOLS, Petitioner,

v.

The Honorable George VAN WAGNER, Special Judge of Pottawatomie County, State of Oklahoma, Respondent.

No. A–18123.

Court of Criminal Appeals of Oklahoma.

June 13, 1973.

Irvin Owen, Shawnee, for petitioner.

John L. Clifton, Dist. Atty., Charles L. Lane, Asst. Dist. Atty., for respondent.

## OPINION AND ORDER

BLISS, Presiding Judge:

In the District Court of Pottawatomie County, Case No. CRF–73–23, petitioner, William Nuckols, was found guilty for the offense of Direct Contempt of Court and in summary proceedings sentenced to four (4) months imprisonment in the Pottawatomie County Jail. From this proceeding, counsel for the petitioner has made application for a Writ of Prohibition seeking relief from this sentence.

In summary, the facts indicate that on February 3, 1973, petitioner was subpoenaed and called as a State's witness at a preliminary hearing conducted in the case of State v. Luna, CRF–73–23. After being sworn, petitioner refused to answer questions propounded by the prosecutor invoking his privilege against self-incrimination. The State offered immunity from prosecution with the special judge, who was sitting as a magistrate over the preliminary hearing, granting petitioner immunity from prosecution. Petitioner and State were both given an opportunity to respond with statements in mitigation of punishment. Thereafter, the sentence was deferred and upon the petitioner's refusal to testify at a subsequent preliminary hearing, he was remanded to the custody of the Pottawatomie County Sheriff.

In passing on the merits of petitioner's contentions, it is necessary first to determine whether immunity has been lawfully granted to petitioner as a basis for finding petitioner in direct contempt of court for not responding to State's questions. Article II of the Oklahoma Constitution, § 21 states as follows:

"No persons shall be compelled to give evidence which will tend to incriminate him, except as in this Constitution specifically provided; nor shall any person, after having been once acquitted by a jury, be again put in jeopardy of life or liberty for that of which he has been acquitted. Nor shall any person be twice put in jeopardy of life or liberty for the same offense."

The petitioner's privilege against self-incrimination must be construed in conjunc-

tion with Article II, Oklahoma Constitution, § 27 which states as follows:

"Any person having knowledge or possession of facts that tend to establish the guilt of any other person or corporation charged with an offense against the laws of the State, shall not be excused from giving testimony or producing evidence, when legally called upon so to do, on the ground that it may tend to incriminate him under the laws of the State; but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may so testify or produce evidence."

 In construing the language in the above section "when legally called upon so to do" we determine that once a witness is legally granted immunity from prosecution he is not excused from testifying on the basis of the asserted privilege. However, unless the immunity is lawfully extended to petitioner, he is not protected by a cloak of immunity and consequently, he conceivably could still be subject to prosecution for the offense for which he is claiming this immunity. See *Faucett*, Infra. Consequently, unless immunity is lawfully extended and legally binding, a refusal to testify founded upon this privilege cannot be a basis for holding petitioner in direct contempt of court.

 In the case of Faucett v. State, 10 Okl.Cr. 111, 134 P. 839 (1913), this Court held a justice of the peace, presiding over a coroner's jury, did not have the authority to grant a witness immunity from prosecution in the district court. In deciding this issue, this Court made the following statement:

". . . There is no logical escape from the conclusion that under our constitutional provisions and our statute immunity can only be secured by the action of a court having jurisdiction to finally try the matters with reference to which the immunity is claimed. In a trial before a justice of the peace he may com-

pel a witness to answer questions which would incriminate such witness as to any matter within the jurisdiction of the justice of the peace for final trial; but beyond this he cannot go. If he could, he would have power to bind the county court, the superior court, the district court, and this court . . ."

Under the 1969 court reform constitutional revisions, the trial courts were reorganized into one district court consisting of judges with differing amounts of authority. Consequently, there is only one district trial court with no state courts of inferior jurisdiction. Therefore, the language in the above opinion referring to inferior courts is not applicable to the case at bench. However, under authority of Article VII, Oklahoma Constitution, § 7, the legislature in 20 O.S.1971, § 123, has limited the "jurisdiction" of special judges to final adjudication of misdemeanors and magistrate authority in all criminal matters. A special judge sitting as a magistrate at preliminary hearing is not, by statute, vested with the inherent authority to finally adjudicate the offense for which the petitioner is claiming immunity. Consequently, we determine a special judge sitting as a magistrate at preliminary hearing does not have the authority to grant immunity from prosecution for a felony. We determine immunity from prosecution was not legally extended to the petitioner and his refusal to testify does not serve as a ground, in light of his privilege against self-incrimination still being existent, for a conviction for the offense of direct contempt of court. The court with the final authority to adjudicate the offense for which the immunity is claimed, the district court in the instant case, must be the court which extends immunity from prosecution. The special judge in the instant case is acting in excess of his jurisdiction in granting this immunity and for that reason there is no jurisdictional basis for holding the petitioner in direct contempt of court. For this reason, the petitioner is granted his Writ of Prohibition.

■ We deem it necessary to establish a procedure to follow to cite a party for contempt of court for refusal to answer a question or questions before an examining magistrate in a felony case and we now declare the procedure to be as follows:

I. The witness must be called before an examining magistrate and placed under oath.

II. A pertinent question must be propounded to the witness by the prosecuting official, defense counsel, or the examining magistrate.

III. The witness must refuse to answer the question on the ground that an answer would tend to incriminate the witness under some state law.

IV. The prosecuting official, the defense counsel, if there be one, and the witness (with his attorney, if he has one) shall go before the district court of the county, either a district judge or an associate district judge of the county in which the preliminary examination is being conducted, and neither then acting as an examining magistrate.

V. The prosecution official must inform the court of the matters set forth in paragraphs I through III above, and ask the advice and assistance of the court in connection with the privilege claimed.

VI. The court shall hear the question which the witness has refused to answer.

VII. The court shall make certain that the witness understands the question that has been put to him. If the witness does not understand the question, it must be reframed or restated so that there is no doubt that he does understand it.

VIII. The court shall then proceed to consider the bare question, which the witness has refused to answer, and shall determine whether or not, from the face of the question, an answer could, in fact, tend to incriminate the witness under any state law.

IX. If the question does not, on its face, disclose that an answer would tend to incriminate, the witness must then be given an opportunity to be heard and, if it is desired, to introduce any relevant evidence which substantiates the claim that from the implications of the question, in the setting in which it is asked, there is real and appreciable danger that the answer would be dangerous because an injurious disclosure might result from it.

X. If, after a consideration of the question in the light of the evidence adduced, any other relevant facts, and the applicable law, the court is satisfied that an answer would not tend to incriminate the witness, the court shall then rule that the privilege may not be validly claimed and shall direct the witness to return before the examining magistrate and answer the question; otherwise the judge may grant the witness' claim of privilege, thereby granting the witness immunity from any prosecution premised on the question answered.

XI. If the witness when returned to the preliminary examination still refuses to answer the question, the examining magistrate shall inquire of the witness:

A. If the witness understands the question;

B. If the witness understands that the court has ruled that the privilege against self-incrimination may not be validly claimed for that question, and the court has ordered him to answer it; or,

that the court has granted the witness immunity from prosecution premised upon the witness' answer;

C. If the witness has given all the reasons that he has for his refusal to answer the question; and,

D. If the witness still refuses to answer the question as directed by the magistrate.

XII. If the witness affirmatively answers each of the four questions set forth in paragraph XI, supra, the witness has committed a contempt in the presence of the magistrate. The magistrate may then certify he saw and heard the conduct constituting such contempt, and may proceed to punish the witness summarily in accordance with the views expressed herein. [See Layman v. Webb, Okl.Cr., 350 P.2d 323 (1960)]

 We further observe petitioner's argument due process requires a jury trial on the offense of direct contempt of court to be without merit. A summary proceeding on the offense of direct contempt is not *ipso facto* a violation of due process. Mayberry v. Pennsylvania, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971); Re William Oliver, 333 U.S. 257, 68 S. Ct. 499, 92 L.Ed. 682 (1947). We are of the opinion the circumstances in the case at bench falls within the rule in *Mayberry*, supra, and *Oliver*, supra. However, Article II, Oklahoma Constitution, § 25, provides that in no case shall a penalty or punishment be imposed for contempt, until an opportunity to be heard is given. The case of Cook v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925), guarantees a person alleged to be in contempt of court, who has a right to a hearing, the right to be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation. Therefore, by construing the Oklahoma constitutional provision with the procedural requirements announced by the Supreme Court of the United States, the petitioner has the right to be heard with all procedural guarantees announced in *Cook, Mayberry* and *Oliver*, supra, unless the record clearly manifests an intelligent waiver, which will not be presumed from a silent record.

The petitioner's application for a Writ of Prohibition is hereby granted in part with instructions to the trial court to vacate its Order entered finding the petitioner in direct contempt of court, and denied in part. It is so ordered.

BRETT and BUSSEY, JJ., concur.